MERCHANTS NATIONAL BANK v. R. D. McANULTY ET AL.

No. 362.—Decided January 27, 1896.

1. **Release of One of Several Makers of a Note.**

The release by the holder of a promissory note of one of several co-obligors in the note, upon a part payment, does not operate to discharge the other makers, unless such was the intent of the party making such release. (P. 126.)

2. **Co-obligors—Contribution.**

When two or more persons enter into a contract for the payment of money to a third person, the law at the same time raises an implied obligation, as between the obligors in such contract, that each will bear his proportional part of

the burden of the contract, and in case one of them should discharge all of the contract, or pay more than his proportional part, the others will contribute to indemnify him for the payment of any sum in excess of his proportional part thereof. 88 Texas, 428. (P. 127.)

**3. Same.**

This right not depending upon the written contract cannot be impaired by the holder of the paper. (P. 128.)

**4. Contribution—Extent of Right.**

The right of a co-obligor to contribution extends only to the excess paid over his proportional part; the right is against all of the other obligors equally. (P. 129.)

ERROR to Court of Civil Appeals for Second District, in an appeal from Tarrant County.

Suit by the Merchants National Bank, upon the notes described in the opinion, against all the makers thereof. Swasey, one of the defendants, made part payment after the suit was commenced and was released. The trial court gave judgment in favor of defendants, holding this a discharge of all. The bank appealing, this judgment was reversed by the Court of Civil Appeals and judgment rendered against all the defendants except Swasey, and denying him judgment over against his co-defendants for contribution. Taylor, Roche and Swasey prosecuted separate writs of error. The facts appear in the opinion.

*J. W. Wray,* for E. W. Taylor, and *Ross & Terrell,* for J. J. Roche, admr., plaintiffs in error.—The Court of Civil Appeals erred in holding that Swasey was released from all liability on the indebtedness sued upon, by reason of the payment made to secure said release by Martin Casey, yet that the release and discharge of Casey from liability thereon did not operate to discharge his co-obligors.

The court erred in holding that though Swasey was released from all liability upon the undertakings sued on, and though the purchase by Casey from the bank of Swasey's liability thereon and his discharge for a valuable consideration paid by Casey operated as a release to Swasey, yet that such release did not operate to release his co-obligors: and that such release was only in the nature of a covenant not to sue.

The court erred in its conclusion of fact that it was in no sense the intention to release the remaining signers of the note but the distinct understanding was that they were not to be released. Hale v. Spaulding, 14 N. E. Rep., 534; Tuckerman v. Newhall, 17 Mass., 584; Willings v. Consequa, Pet. C. C., 301; Mason v. Jouett, 2 Dana, 108; 2 Daniels' Neg. Inst., sec. 1294.

*S. M. Carter,* for Swasey, plaintiff in error.—The Court of Civil Appeals erred in holding that Swasey was not entitled to contribution under the conclusions of fact found by the court. La Vega v. League, 21 S. W. Rep., 565; Coffin v. Bradbury, 35 Pac. Rep., 716; Trammell v. Trammell, 15 Texas, 293; Cannon v. McDaniel, 46 Texas, 303; Kellum v.

Hines, 24 S. W. Rep., 310; Ins. Co. v. Ward, 26 S. W. Rep., 760; Cockerell v. Faires, 88 Texas, 428.

*Wynne, McCart & Booty*, for defendant in error.

BROWN, ASSOCIATE JUSTICE.—The Merchants National Bank held a note executed by The Ryland Gold Mining Company, dated December 10, 1890, for the sum of $28,438.50, which was endorsed by C. J. Swasey, E. W. Taylor, A. B. Smith, W. F. Lake, A. M. Britton, Thomas Roche and R. E. McAnulty. At the time this note became due the bank was unwilling to renew it, and two notes were given in lieu thereof, dated March 13, 1891, one for $21,080.08, signed by all of said parties, and another for $8240, signed by all of the parties except R. E. McAnulty, who refused to sign the latter note. McAnulty signed the first note for $21,080.08 and delivered it to A. B. Smith, cashier of the bank, with the understanding that it was not to be delivered to the bank, nor become effective until it was signed by Sallie Huffman. Sallie Huffman did not sign the note, but Smith delivered it, and it became assets of the bank. The two last notes described were to become due four months after date, to bear interest from date at 12 per cent per annum; and in case they were placed in the hands of an attorney for collection, 10 per cent attorney's fees to be added.

Suits were filed in the District Court of Tarrant County by the bank upon each of said notes, against all the makers thereof. Thomas Roche having died, J. J. Roche was appointed administrator and made a party defendant. The two suits were consolidated into one constituting this cause.

After the filing of the suits stated above, Martin Casey paid to the bank, on behalf of C. J. Swasey, in cash and promissory notes accepted by the bank, the sum of $22,500, the bank agreeing at the time to discharge Swasey from any further liability to it upon the two notes embraced in that suit, and another note executed by the same parties, except McAnulty, for the sum of $23,867.50. The sum of $12,298 of the money paid by Swasey was credited upon the two notes embraced in this suit.

Swasey pleaded his discharge, and the other defendants likewise set up the discharge of Swasey, claiming that it had the effect to discharge them also. R. E. McAnulty pleaded that he signed the two notes sued upon with the understanding that they were not to become effective, as against him, until signed by Sallie Huffman, which had not been done, and that therefore he was not bound on the said notes. The bank replied setting up the fact that the two notes were given in lieu of the note above described made by the Ryland Gold Mining Company, and endorsed by McAnulty and the other defendants, and prayed that in case McAnulty was held not to be bound upon the notes in suit, then that it might recover against him upon the original note.

The Court of Civil Appeals found that, at the time the bank discharged Swasey, it was not intended by the parties that the other obligors upon

the said note should be discharged, and held that the discharge of Swasey did not operate to discharge his co-obligors.

The trial court decided that Swasey was discharged by the bank, and that his discharge had the effect to discharge the other defendants from liability upon the notes in suit, and entered judgment against the bank in favor of all the defendants.

The payment by Swasey to the bank was made December 20, 1892, at which time there was due upon the notes sued on the sum of $39,131.32 principal, interest, and attorney's fees. The credit placed upon these notes amounted to $12,298. There were seven of the defendants jointly and severally bound upon the said notes, and the pro rata part of each was $5590.19. The amount paid by C. J. Swasey, in excess of the proportion chargeable to him, as between the defendants, was $6707.81. This excess being divided pro rata between the other six defendants would give the sum of $1117.97 to each.

The court below entered judgment in favor of C. J. Swasey against each of his co-defendants for the sum of $1756.95, with 12 per cent interest per annum from December 20, 1892.

The Court of Civil Appeals reversed the judgment of the District Court and rendered judgment in favor of the bank against all of the defendants, except C. J. Swasey. It held McAnulty not bound upon the notes in suit, but that he was bound upon the original note for which they were given, and entered judgment against him for the amount of that note and interest, less the payment made by Swasey for $12,298. Thus practically McAnulty was held bound equally with his co-defendants. The Court of Civil Appeals reversed the judgment of the District Court rendered in favor of C. J. Swasey against his co-defendants, and entered judgment that Swasey take nothing upon his plea over against his co-defendants.

The plaintiffs in error, Taylor and Roche, claim that there was no testimony to sustain the finding of the Court of Civil Appeals that the bank, when it discharged C. J. Swasey, reserved its right to recover against the other makers of the said notes. Upon examination of the facts we think that the court was justified by the testimony in its conclusion of fact complained of, and it is unnecessary for us to further discuss the matter, since the existence of any testimony to sustain the conclusion renders it final so far as this court is concerned.

Taylor and Roche present in their petition for writ of error, in a number of propositions, substantially one question for our consideration, which is: Did the discharge of C. J. Swasey by the Merchants National Bank, under the facts and circumstances found by the Court of Civil Appeals, operate to discharge the co-obligors of the said Swasey? The opinion of the Court of Civil Appeals, by Chief Justice Tarlton, so clearly states the law applicable to the facts of this case that it is unnecessary for us to enter into any discussion of the matter; we therefore simply approve the judgment of the Court of Civil Appeals on that question.

C. J. Swasey applied to this court for a writ of error, assigning as

grounds of error the action of the Court of Civil Appeals in denying to him the right of contribution as against his co-defendants, who were jointly and severally bound with him upon the notes on which he made the payments stated herein.

It is a general and familiar rule of law that, when two or more persons enter into a contract for the payment of money to a third person, the law at the same time raises an implied obligation, as between the obligors in such contract, that each will bear his proportional part of the burdens of the contract, and in case one of them should discharge all of the contract, or pay more than his proportional part, the others will contribute equally to indemnify him for the payment of any sum in excess of his proportional part thereof. (Faires v. Cockerell, 88 Texas, 428, 31 S. W. Rep., 190.) In the case last cited we carefully examined this subject and cited the authorities. We therefore refer to that case and the authorities cited therein to sustain the proposition stated.

If the bank had not discharged Swasey upon the payment made by him, he would, undoubtedly, have been entitled to recover against each of his co-obligors the proportional part of such obligor of the sum that Swasey paid to the bank in excess of the pro rata of the said Swasey.

It is claimed that, because Swasey was discharged by the bank, he cannot recover from the other defendants. If the co-obligors of Swasey, or any one of them, had paid upon the said debt, after Swasey's discharge, a sum greater than that paid by Swasey, and greater in amount than such person should have paid, he could have maintained an action against Swasey for contribution notwithstanding his discharge; and this right no doubt exists and will continue in case any one of the defendants, by reason of the insolvency of the others, should be hereafter compelled to pay more than his proportional part of the said indebtedness. (Boardman v. Paige, 11 N. H., 431; Glasscock v. Hamilton, 62 Texas, 143; White & Tudor's L. Cases Eq., vol. 1, pt. 1, 169.)

The obligation between the makers of the notes did not depend upon the written contract, and the payee of the note, the bank, had no interest therein. It could not, by its discharge of Swasey, in any way impair his obligation to his co-obligors. (Boardman v. Paige, supra.)

If it be true that Swasey's obligation to contribute to the other makers of the notes, in case they, or either of them, should pay an amount in excess of his part thereof, still remains in force after his discharge, how can it be said that the obligation of the other obligors in said contract was affected and destroyed, in so far as it bound them to indemnify Swasey for the sum paid by him for their benefit? By the payment made, Swasey discharged the sum of $6707.81, for which the other defendants were bound. In other words, he paid for each of the other defendants the sum of $1117.97. If the discharge of Swasey had operated to absolve him from liability to his co-obligors to make contribution to them, then such discharge would have had the effect to discharge each and all of the makers of said note from liability to the bank. However, since they remained obligated to pay the remainder of the notes, the payment by

Swasey, in excess of his proportional part thereof, inured to their benefit, and, upon the principles of law and equity, on which rests the doctrine of contribution, they were bound to reimburse him to the extent of the benefit received by them, and each of them, by reason of the payment made by him. If we were to hold that Swasey was not discharged from his obligation to contribute to his co-obligors in case they should thereafter discharge more than their ratable portion of the note, but that they were each discharged from their obligation to him (Swasey) to make like contribution upon the payments made by him, we would have the anomalous condition of having destroyed the mutuality of the contract, and preserved its binding effect upon one party alone. This, we think, cannot be sustained either upon authority or sound reasoning; and we hold that Swasey was entitled to recover against each of his co-defendants the one-sixth part of the sum that he paid upon the said notes, in excess of his proportional part thereof.

Swasey's right of recovery was, not upon the note, but upon the implied contract which the law raised between the joint promisors; and it was error in the District Court to give judgment for 12 per cent interest upon the amount recovered by Swasey against each of the other defendants. The District Court, likewise, gave judgment in favor of Swasey for the one-seventh part of the whole amount paid by him, against each of his co-defendants. If all the defendants had been discharged by the discharge of Swasey, the judgment for this amount would have been correct, but as they were not discharged, he was only entitled to recover for their proportional part of the excess of his payment over the amount for which he was liable, with 6 per cent interest from the 20th day of December, 1892. Faires v. Cockerell, above cited; Burns v. Ledbetter, 56 Texas, 282; Close v. Fields, 2 Texas, 232; Smith v. Johnson, 23 Cal., 64; Waldrip v. Black, 74 Cal., 409.

The case of Glasscock v. Hamilton, 62 Texas, 143, fairly sustains our position on this question. In that case there were five sureties upon the bond of R. N. Lane, Collector of Internal Revenue, upon which bond judgment was entered in the United States Circuit Court, for the sum of $34,384.03, against the principals, R. N. Lane, Morgan Hamilton, James H. Raymond, James P. McKinney and James M. Swisher. Glasscock, one of the sureties, having died, the case was dismissed as to him, reserving all rights of the United States against his estate. It was provided in the judgment that the sureties against whom judgment was rendered might discharge their liability by the payment of $10,000. Hamilton, Raymond, and McKinney paid the $10,000, Swisher being insolvent. This left $24,384.03 to the payment of which Glasscock's estate alone was liable. Hamilton sued the estate of Glasscock to recover its proportional part of the payment made by him over and above the portion of the $10,000 which would have been chargeable to him upon a pro rata distribution between the solvent sureties. The court held that he was not entitled to recover from the estate of Glasscock, because that estate was alone left responsible to the United States for the balance of

the judgment, which was a sum greater than all the sureties had paid thereon.

It is fairly deducible from this case that Hamilton, notwithstanding his discharge, would have been entitled to recover against the estate of his deceased co-obligor if the amount paid by him (Hamilton) had been a sum greater than that to which he would have been liable in the discharge of the entire judgment. It is nowhere intimated in the opinion that the discharge of Hamilton in any way affected his right of recovery. In that case the court said: "The equitable right to contribution, which is administered at law as well as in equity, proceeds upon acknowledged principles of equity and justice, and those principles require that, where one jointly bound by common obligation to pay the debt of another shall pay more than his ratable share of it, the other shall reimburse him therefor; but if such party shall obtain his own discharge, by payment of less than his ratable proportion of the whole debt, and leave his fellow-surety liable to pay to the creditor his own original full share of the debt, there is no rule that can be deduced from these maxims of equity and justice on which to raise an assumpsit that such co-surety should contribute to that one who has thus compromised, paid, and obtained a discharge. Whilst each surety is, as to the creditor, liable for the whole debt, as between himself and his co-sureties, he is liable to contribution, as those paying the debt, to no more than his equal portion ratably distributed between those who are solvent and able to sustain with him the common burden."

There is nothing in the record of this case to show that either of the sureties was insolvent. Therefore, the proportion of the debt left for each of the six to pay, after the discharge of Swasey, was less than the amount paid by Swasey on the debt, and each of them, as between him and Swasey, was liable only for that ratable proportion.

It is therefore ordered that the judgment of the Court of Civil Appeals be in all things affirmed, except as to the said C. J. Swasey's claim against his co-defendants, and that the judgments of both courts, as between Swasey and his co-defendants, be reversed, and judgment be here entered in favor of C. J. Swasey against E. W. Taylor, A. B. Smith, A. M. Britton, J. J. Roche, administrator of Thomas Roche, deceased, W. F. Lake, and R. E. McAnulty, each for the sum of $1117.97, with interest thereon at 6 per cent per annum from the 20th day of December, 1892, for which the clerk of the District Court of Tarrant County will issue execution against each of said defendants, except J. J. Roche, and that as to said J. J. Roche the judgment be certified to the County Court for payment. It is further ordered that the Merchants National Bank recover of E. W. Taylor and J. J. Roche, administrator, etc., and their sureties, its costs on this writ of error, and that execution issue therefor, and for that part chargeable to the estate of Thomas Roche this judgment shall be certified to the County Court for payment. It is further ordered that C. J. Swasey have and recover of E. W. Taylor and J. J. Roche, administrator of the estate of Thomas Roche, deceased, and their

sureties, his costs upon writ of error to this court, for which execution may issue against the said E. W. Taylor and the said sureties, and that the said judgment, as to the said J. J. Roche, be certified to the County Court for payment.

<div align="right">

*Affirmed except as to Swasey.*
*Reversed and rendered as to him.*